# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| YEISON LOPEZ LOPEZ, <br><br> Petitioner, <br><br> vs. <br><br> CHAD SHEEHAN, et al., <br><br> Respondents. | No. 25-CV-4052-CJW-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

_____

This matter is before the Court on petitioner Yeison Lopez Lopez's Title 28, United States Code, Section 2241 habeas petition (Doc. 1) and Amended Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction (Doc. 7). In support of his motion, petitioner filed exhibits A through I. (Docs. 10-1 through 10-6, 24-1through 24-3). On October 21, 2025, the Court held oral argument on the motion, (Doc. 26), and accepted into evidence respondents' Exhibits A through G.[1] (Docs. 17-1 through 17-8). For the following reasons, the Court **grants in part and denies in part** petitioner's motion.

## I. PROCEDURAL BACKGROUND

On July 31, 2025, an Immigration and Customs Enforcement ("ICE") officer encountered petitioner, a citizen of Guatemala, in a local jail upon petitioner's arrest for a probation violation on a state charge. (Doc. 10-3, at 3). On August 6, 2025, ICE authorities took petitioner into federal custody and thereafter served him with a Notice to

---

[1] Obviously, the parties' use of the same method of identifying exhibits by the same letters leads to potential confusion. The Local Rules call for plaintiffs (petitioners) to use number designations and defendants (respondents) to use letters. *See* N.D. Iowa Local R. 83E(a). In future filings, the Court directs the parties to follow this convention.

Appear in Removal Proceedings, asserting he was subject to removal as an alien unlawfully present in the United States. (Doc. 10-2). Petitioner requested bond. (Doc. 10-5).

On August 28, 2025, an immigration judge denied petitioner's request for bond, finding the judge was without jurisdiction on the ground that petitioner was detained under Title 8, United States Code, Section 1225(b)(2)(A). (Doc. 10-1, at 2–3; Doc. 17-3, at 4). Petitioner appealed. (Doc. 17-3).

On September 4, 2025, petitioner filed the instant petition for habeas relief with this Court. (Doc. 1).

On September 9, 2025, the Court entered an initial review order, ordering respondents to respond or file a dispositive motion within 30 days. (Doc. 2).

On September 10, 2025, petitioner filed a motion for a TRO and preliminary injunction. (Doc. 3). On September 17, 2025, petitioner filed an amended motion for a TRO and preliminary injunction. (Doc. 7). Respondents filed two responses. (Docs. 11, 18).

On September 18, 2025, petitioner appeared before an immigration judge for a "master hearing," the first stage of removal proceedings. (Doc. 17-5).

## II. DISCUSSION[2]

Petitioner argues he is entitled to habeas relief on the merits, asking the Court to assume jurisdiction over this matter, order petitioner's immediate release pending resolution of the merits of this matter, or alternatively to order respondents to provide petitioner with a bond redetermination hearing. (Docs. 1, 7). At the hearing on

---

[2] Substantial portions of this analysis are taken from an order drafted by my colleague, the Honorable Leonard T. Strand, in *Giron Reyes v. Lyons*, No. C25-4048-LTS-MAR, 1225 WL 2712427 (N.D. Iowa Sept. 23, 2025). The Court has conducted its own legal analysis, but reached the same conclusions as Judge Strand for the same reasons and found his analysis sound. For that reason, the Court has largely adopted it here.

2

petitioner's motions, the government argued that if the Court finds in favor of petitioner on the merits of his motion for a preliminary injunction, the remedy should be requiring the government to provide petitioner with a bond redetermination hearing, not granting his request for immediate release.

### A. Title 8, United States Code, Sections 1225 and 1226

This case tests the interplay between two immigration statutes. Section 1225 covers "applicants for admission"; defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). These applicants must undergo an inspection by an immigration officer to ensure their admissibility into the United States. 8 U.S.C. § 1225(a)(3); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). If they are found to be unlawful entrants, they are split into two categories.

If the alien is inadmissible due to fraud or willful misrepresentations, lacks necessary documentation or fits a designation by the Attorney General without having been continuously present in the United States for the past two years, then he or she may be summarily removed (excepting asylum or persecution claims). 8 U.S.C. § 1225(b)(1)(A) (citing *id.* § 1182(a)(6)(C), (a)(7)). An alien who does not fit those categories is still detained pending a removal proceeding. *Id.* § 1225(b)(2)(A) (citing *id.* § 1229a). Either way, Section 1225 does not anticipate the release of an applicant for admission pending a removal decision. *Cf. Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

Section 1226 governs the process of arresting and detaining aliens found inside the United States pending their removal. *Jennings*, 583 U.S. at 288. As the Supreme Court explained:

3

Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on . . . bond" or "conditional parole." *Ibid*.

Section 1226(c), however, carves out a statutory category of aliens who may not be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release aliens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2). Any release under those narrow conditions "shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." *Ibid*.

In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id*. at 288–89 (footnote omitted).

Federal regulations detail the bond procedure. First, Department of Homeland Security (DHS) officials make an initial custody determination. 8 C.F.R. § 236.1(c)(8). If DHS officials decide to keep the alien detained, the person may request a bond hearing before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also id*. § 1003.19. At that time the alien may be released upon a showing by clear and convincing evidence that he or she is not a danger to the community or a flight risk. 8 C.F.R. §§ 236.1(c)(3), 1236.1(c)(3).

Thus, while aliens detained under Section 1225(b) are not entitled to a bond hearing, detainees under Section 1226(a) are entitled to a bond hearing (subject to

exceptions at Section 1226(c), inapplicable here). The government contends that petitioner is an applicant for admission who, under Section 1225(b)(2), cannot be released pending his removal proceedings. (Doc. 11, at 11). Petitioner resists being categorized as an applicant for admission and contends that the government must abide by the procedures under Section 1226(a), thus entitling him to a bond hearing. (Doc. 7, at 5).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes federal courts to issue a TRO or a preliminary injunction. Such relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Thus, the movant has the burden of establishing its propriety. *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). There are four factors (known as the *Dataphase* factors) to consider before I may grant injunctive relief: (1) the likelihood of success on the merits, (2) the threat of irreparable harm to a movant absent an injunction, (3) the balance of harms an injunction would have on the other parties and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "No factor is determinative, but the movant's probability of success is the most significant." *Wilbur-Ellis Co. v. Jens*, 139 F.4th 608, 611 (8th Cir. 2025) (citing *Wilbur-Ellis Co. v. Erikson*, 103 F.4th 1352, 1356 (8th Cir. 2024)).

## IV. DISCUSSION

### A. Jurisdiction Channeling and Jurisdiction Stripping

Before the Court turns to consider petitioner's motion, it must first address the government's alternative argument that the overall immigration statutory scheme divests this Court of jurisdiction. (Doc. 18, at 13). If the government is correct, then the Court cannot get to the merits of the motion.

First, the government argues that Section 1252(g) deprives courts of jurisdiction to review "any cause or claim by or on behalf of [a noncitizen] arising from the decision

5

or action by the Attorney General to [1] *commence proceedings*, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." (Doc. 18, at 13 (emphasis the government's)). The government argues that "[p]etitioner's detention during his removal proceedings arises from the decision to commence such proceedings against him). (*Id.*).

The Court disagrees. Rather than challenging the government's decision to commence proceedings, petitioner is challenging his continued detention without a bond hearing. *See* (Doc. 7, at 1–2). The Supreme Court has cautioned against the "uncritical literalism" that would give Section 1252(g) such sweeping effect. *Jennings*, 583 U.S. at 293–94.

Second, the government cites Section 1252(b)(9), arguing that "'judicial review of all questions of law' is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order." (Doc. 18, at 14). Again, the Court disagrees. Petitioner is challenging his continued detention without a bond hearing. Petitioner is not "challenging the decision to detain [him] . . . or to seek removal; and [he is] not even challenging any part of the process by which [his] removability will be determined . . . . [Section] 1252(b)(9) does not present a jurisdictional bar." *Jennings*, 583 U.S. at 294–95. In sum, no statutory provision bars the Court from addressing the merits of petitioner's motion.

### B. *Motion for a TRO*

Petitioner requests either a TRO or preliminary injunction. A TRO is not appropriate in this instance. TROs are "temporary," lasting for only 14 days—with the possibility of extension into 28 days. Fed. R. Civ. P. 65(b)(2). Given their temporary status, they are not typically appealable. *Id.*; *see also Trump v. J.G.G.*, 604 U.S. 670, 683–85 (2025) (Sotomayor, J., dissenting); *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753, 754 (2025) (mem.) (Alito, J., dissenting). Because issuing a TRO in

6

petitioner's favor would require that the government give him a bond hearing, it would effectively insulate the order from review until after petitioner has already received his requested relief. The Court finds that a preliminary injunction—which is reviewable—is the only practical option to consider in this situation.

### C. Preliminary Injunction Analysis

As noted, the propriety of entering a preliminary injunction requires an analysis of the so-called *Dataphase* factors. 640 F.2d at 114.

#### 1. Likelihood of Success on the Merits

Petitioner argues that the government's denial of his requested bond hearing violates his Fifth Amendment right to due process, federal law, and its own administrative procedures. (Doc. 1). Aliens have due process rights to life, liberty and property. *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "This is because once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). Because petitioner is in the government's custody, his liberty interest is at stake. *Zadvydas*, 533 U.S. at 690; *accord Barrajas v. Noem*, No. 25-cv-00322, 2025 WL 2717650, at *6 (S.D. Iowa Sept. 23, 2025). For present purposes, the government conceded at the hearing that if petitioner is not an applicant for admission, then he would be entitled to a bond hearing. Thus, if petitioner is not an "applicant for admission," the denial of his request for a bond hearing likely violates his due process rights.

Section 1225(a)(1) states:

An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been

7

> interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

The term "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Thus, the government argues that any alien who illegally entered the United States without having been inspected by an immigration officer is an applicant for admission. (Doc. 18, at 7).

That reading is broad, but intuitive as no qualifiers limit the scope on timing or entry grounds. Under this interpretation, because petitioner admits having entered the United States without inspection, he would be an applicant for admission. And because Section 1225(b)(2) is the "catchall provision that applies to all applicants for admission," *Jennings*, 583 U.S. at 287, the government contends that it must apply to petitioner. (Doc. 18, at 9).

On the other hand, even statutory language that is unambiguous in isolation must be read in context. *See Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality); *Pulsifer v. United States*, 601 U.S. 124, 133 (2024). The context clues present here point against petitioner's classification as an applicant for admission. Like Judge Strand, the Court finds the analysis in *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025), to be particularly persuasive on this point. Considering Section 1225 alongside its Section 1226 companion demonstrates that the most natural interpretation of Section 1225 is that it applies to aliens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection. *Id.* at *5. Section 1225 repeatedly refers to aliens entering the country. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.*

8

§ 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in Section 1225(b)(2)(B), reflecting that Congress envisioned applicants for admission as being arriving aliens. In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. In sum, Section 1225 is set up with arriving aliens in mind.

Compare that to Section 1226's broader language that realistically applies to any alien awaiting a removal decision. Considering Section 1225 in its entirety, and in relation to Section 1226, reveals that Section 1225 is more limited than what that plain text of Section 1225(a)(1) might indicate when construed in the abstract. The Court does not find, as the government contends, that both Sections 1225 and 1226 apply to aliens like petitioner and that the government then can choose under which section it wishes to proceed. Nothing in the statutory construction of those sections would suggest that type of statutory scheme.

Moreover, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Adopting the government's reading would be to find recent congressional enactments superfluous. Congress passed the Laken Riley Act to amend Section 1226(c) and include more classes of aliens who are ineligible for bond under Section 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A), (6)(C), and (7)). Under the government's expansive interpretation of Section 1225, that amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien,

regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act.

In short, for purposes of petitioner's motion for entry of a preliminary injunction, the Court finds that he is likely to succeed on the merits of his habeas petition, at least to the extent that he is entitled to a bond hearing. This factor weighs in favor of a preliminary injunction.

### 2. *Threat of Irreparable Harm*

Petitioner states that DHS did not present any evidence that he was a danger to the community or flight risk, but rather simply argued to the IJ that he posed a flight risk. (Doc. 1, at 7). Petitioner states that argument is "heavily mitigated by [petitioner's] proposed evidence," but does not state what that evidence is. (*Id.*). Petitioner argues that he now "languishes in custody for the duration of the bond appeal, or even longer, despite qualifying for a bond redetermination hearing in immigration court." (Doc. 7, at 2). Thus, petitioner argues that "the likelihood of further irreparable harm is undeniable." (*Id.*, at 3). The government states only that petitioner has failed to establish irreparable harm. (Doc. 11, at 20).

Indefinite civil confinement constitutes irreparable harm. There are only narrow, nonpunitive circumstances under which a special justification authorizes such restraint. *Zadvydas*, 533 U.S. at 690. The removable status of an alien, standing alone, is not one of them. *Id.* at 691–92. By seeking detention under Section 1225(b), the government deprives a suspected alien the chance for a bond determination, thus taking away an individualized finding of dangerousness or flight risk to keep the alien detained throughout the removal proceedings. *Cf. Jennings*, 583 U.S. at 330–31 (Breyer, J., dissenting). Protracted civil detention clearly threatens irreparable harm. This factor weighs in favor of a preliminary injunction, at least to the point of requiring a bond

10

hearing where petitioner can present evidence and put to the test the government's assertion that he poses a danger or a flight risk.

### 3. Balance of the Equities and Public Interest

The balance of the equities and considerations of the public interest are typically distinct, yet they merge when the federal government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). How much weight to give these factors is unclear. *Compare Noem v. Vasquez Perdomo*, 2025 WL 2585637, at *1 (Sept. 8, 2025) (mem.) (Kavanaugh, J., concurring) ("Particularly in 'close cases,' the Court also considers the balance of harms and equities to the parties, including the public interest." (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam))), *with NetChoice LLC v. Fitch*, 145 S. Ct. 2658 (2025) (Kavanaugh, J., concurring) (arguing that even though the law was "likely unconstitutional," application to vacate stay should be denied because petitioner failed to "sufficiently demonstrate[ ] that the balance of harms and equities favors it"). Regardless of their proper weight, the result here is equivocal.

As already discussed, petitioner's interest in receiving a bond hearing is significant. However, the government provides at least some measure of a counterweight. The government has a considerable interest in controlling the presence of aliens in this country. *See Dep't of State v. Muñoz*, 602 U.S. 899, 911–12 (2024) ("[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."). In addition, recent Supreme Court orders acknowledge the harm a governmental agency incurs when it is enjoined from acting within its apparent scope of authority. *See, e.g.*, *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025) (mem.); *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) ("[T]he Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer

faces from being unable to perform her statutory duty."); *Trump v. CASA, Inc.*, 606 U.S. 831, 861, (2025) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (alteration in original) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012).

Of course, an injunction that simply compels the government to grant petitioner a bond hearing (while not compelling his release), is a limited imposition on the government's interests. Nevertheless, in balance the Court finds this factor in equipoise.

### 4. Summary

As noted above, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. After balancing the *Dataphase* factors however, the Court finds a limited preliminary injunction to be appropriate. Specifically, the Court finds that petitioner has met his burden of showing that he should be granted a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).

Although this is a form of relief that petitioner seeks through his habeas petition, this order does not resolve his underlying case, as he is also seeking immediate release from custody. Thus, the Court directs the Clerk of Court to enter a standard merits briefing schedule.

### V. CONCLUSION

For the reasons set forth herein:

1. Petitioner's motion (Doc. 7) for a TRO and a preliminary injunction is **granted in part and denied in part**, as follows:

> a. The motion is **denied** to the extent that it seeks a TRO.
>
> b. The motion is **granted** to the extent it requests a preliminary injunction requiring a bond hearing before an immigration judge. Respondents are hereby enjoined from depriving petitioner of an individualized bond hearing before an immigration judge under Title 8, United States Code, Section

12

1226(a) and must provide him with such a hearing within 14 days of the date of this order.

c. The motion is **denied** to the extent it requests a preliminary injunction requiring petitioner's immediate release from custody.

2. The Clerk of Court is directed to enter a standard 2241 habeas briefing schedule.

**IT IS SO ORDERED** this 30th day of October, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

13

Case 5:25-cv-04052-CJW-KEM    Document 27    Filed 10/30/25    Page 13 of 13